CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 13 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRED LEWIS WILSON, | )<br>)<br>) |
| Petitioner, | ) Case No. 7:09CV00126<br>) |
| v. | )<br>) MEMORANDUM OPINION<br>) |
| VA D.O.C., | ) By: Glen E. Conrad<br>) United States District Judge |
| Respondent. | ) |

Petitioner Fred Lewis Wilson, a Virginia inmate proceeding pro se, brings this action as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In his petition, Wilson challenges the validity of his confinement pursuant to the October 5, 2006 judgment of the Circuit Court of the City of Salem, Virginia, under which he stands convicted of burglary and larceny. He was sentenced to a total of nine years imprisonment with eight years and three months suspended. (Case No. CR060000-461, -463, and -464.) Respondent filed a motion to dismiss, and Wilson responded,[1] making the matter ripe for decision. Upon review of the record, the court finds that the petition must be dismissed.

I

A. Background

Wilson's submissions and allegations offer the following account of the facts leading to his arrest on the charges at issue in this case. Police officers in the City of Roanoke arrested Wilson on June 30, 2006, while he was in a car, waiting for Walter Hartsook, his codefendant, to

---

[1] Wilson, with some mailing assistance from his mother, has submitted hundreds of pages of documents to the court in support of this habeas petition and two related petitions, Case Nos. 7:09CV00124 and 7:09CV00127, regarding state court convictions in Botetourt County and Franklin County, respectively. As some of this documentation is relevant to issues common to all three cases and was likely intended for consideration in all three cases, the court has reviewed all of the documents Wilson has submitted, whether or not Wilson specifically identified them as being relevant to any particular case. Most of the submissions are not clearly labeled with exhibit numbers, and the record contains multiple copies of many documents. Therefore, the court makes only limited citations to specific documents in the record.

finish burglarizing Bill's Auto Shop. Before officers cuffed both men, Wilson ingested "25 hits of LSD and crack cocaine" to prevent authorities from seizing it. At the Roanoke City Police Department, after officers released Wilson on "P.R. Bond," he suffered "a full blown mental breakdown and refused to leave the police station." He told an officer that he was in fear for his life, because Hartsook had been forcing him to participate in several thefts at area stores by threatening to harm him or his dogs. Wilson also allegedly told the officer that Hartsook's "crack and drug dealer Anthony Davis was extorting" money from Wilson. He asked the officer for help and offered to tell authorities about other thefts Hartsook had committed in area towns. Officers promised to help him, had him sign a "legal rights advice form," and proceeded to lock him in a small room, where officers from several jurisdictions questioned him for hours about these offenses with a tape recorder running. (Case No. 7:09CV00124, Dkt. 1, Exhibit F.) Thereafter, Roanoke County, the City of Roanoke, the City of Salem, Franklin County, and Botetourt County issued felony charges of burglary, larceny, and breaking and entering against Wilson, based on his statements to police and subsequent investigation as to physical evidence of break-ins and missing inventory items at each place of business mentioned in Wilson's statement. In turn, the prosecutors in each jurisdiction used Wilson's statements as factual support for Wilson's subsequent guilty pleas in each jurisdiction in late 2006 and early 2007. Attorney Thomas E. Wray was court-appointed to represent Wilson as to all of the charges except those issued in Roanoke City.

In exchange for Wilson's cooperation, the prosecutors dismissed some charges and agreed to the suspension of large portions of the sentences imposed. Records indicate that Wilson's active prison sentences were as follows: City of Salem, nine months; City of Roanoke, six months; Roanoke County, ten months; Botetourt County, two and a half years; and Franklin County, one year and four months. The Circuit Court of Franklin County imposed one year of the active sentence to run concurrently with the sentence imposed in Botetourt County, but the courts imposed all of Wilson's other sentences to run consecutively with each other for a total

active sentence of 63 months or five years and three months. While the record is incomplete as to the outcome of all charges against Wilson's codefendant, Walter Hartsook, apparently he did not cooperate with authorities and was not convicted on all charges.

The parties discussed Wilson's mental health issues during court proceedings. Wray moved for a competency evaluation in the summer of 2006. On September 9, 2006, Dr. Conrad Daum reported to the General District Court of Botetourt County his medical opinion that Wilson was competent to stand trial. Dr. Daum also reported to Wray his medical opinion that Wilson's mental health problems did not support an argument that Wilson should be found not guilty by reason of legal insanity at the time of the crimes. Wilson continued to have mental health issues at the jail, where he harmed himself, attempted suicide, and was diagnosed as paranoid schizophrenic, among other things.

Wilson now claims that the June 30, 2006 statement was involuntary and thus should not have been used against him. He states that on that day, he was under the duress of having his life threatened and was incapacitated by the effects of the LSD he had ingested. He also alleges that during the day of the statement, officers isolated him, badgered him into confessing, and at one point, stripped him naked so that a female officer could remove his penis piercing, while other officers and inmates taunted and laughed at him. A psychiatric report from June 30, 2006, indicates that Wilson reported having hallucinations. Wilson also asserts that he has never seen the entire statement from June 30, 2006, and that he never admitted to active, knowing involvement in many of the offenses to which counsel advised him to plead guilty.

### B. Proceedings and Allegations Concerning Salem Convictions

In the instant petition, Wilson challenges his convictions in the Circuit Court of the City of Salem. Based on Wilson's June 30, 2006 statement, police in Salem obtained five criminal warrants against Wilson for larceny and burglary offenses committed between June 24 and 26, 2006. He waived his right to indictment and pleaded guilty on October 5, 2006, pursuant to a

written plea agreement, to two counts of grand larceny and one count of statutory burglary. In exchange, the Commonwealth nolle prossed the other warrants. Wilson did not appeal.

On March 11, 2008, Wilson filed a petition for a writ of habeas corpus in the Circuit Court of the City of Salem (CL08-184), alleging the following grounds for relief:

> A. Petitioner's confession was coerced;
>
> B. Counsel was ineffective (1) in failing to obtain and disclose favorable evidence to petitioner regarding petitioner's statements to police and the itemized list of items petitioner was accused of stealing and (2) in failing to take appropriate action regarding petitioner's fragile mental condition; and
>
> C. Petitioner was unlawfully charged for grand larceny items valued under $200, and for burglaries committed by another individual while petitioner waited at another location.

On July 9, 2008, the circuit court dismissed the petition, finding that claims A and C were procedurally defaulted and waived, and that claim B was without merit. The Supreme Court of Virginia refused Wilson's subsequent appeal by order entered March 30, 2009. (Record No. 082176.)

Wilson filed his § 2254 petition in this court on or about April 5, 2009, alleging the following grounds for relief:[2]

> 1. Petitioner did not knowingly give his confession to police, because at the time, he was undergoing a mental breakdown brought on by threats on his life;
>
> 2(a). Trial counsel was ineffective for failing to give the petitioner copies of warrants, an itemized list of items taken, documents regarding his statements, or any information explaining what he was accused of doing;

---

[2] Wilson does not include a separate memorandum in support of the habeas claims stated in the petition. He does, however, attach a copy of his petition to the Supreme Court of Virginia during state habeas proceedings, which offers an explication of the claims he now raises in the federal habeas petition. The court will liberally construe this attachment as a memorandum in support of the federal claims.

2(b). Trial counsel was ineffective for failing to move for a second psychological evaluation after petitioner attempted suicide, mutilated his own nose, and was diagnosed as have paranoid schizophrenia;

2(c). Trial counsel was ineffective for denying petitioner his right to appeal by failing to advise him of this right after the court failed to do so;

2(d). Trial counsel was ineffective for encouraging petitioner to enter an involuntary guilty plea;

3. Petitioner's guilty plea was involuntary because of his mental incompetency, and the competency evaluation given to the court omitted several factors regarding petitioner's mental health; and

4. Petitioner is actually innocent of statutory burglary or of taking any item worth more than $200.00.

## II

In the motion to dismiss, respondent argues that Wilson's petition is untimely filed, pursuant to 28 U.S.C. § 2244(d)(1). In the alternative, respondent argues that the claims are procedurally defaulted and/or reasonably decided by the state habeas court, such that this court must dismiss the petition, pursuant to 28 U.S.C. § 2254(d)(1). Wilson argues that although he filed his federal petition more than one year after his conviction became final, his filing period should be calculated from the date on which he obtained certain documents, that he can show grounds for equitable tolling, that he can show cause and prejudice or actual innocence to circumvent his procedural defaults, and that the state court's adjudication of his claims was unreasonable.

### A. Statute of Limitations

Habeas petitions filed under § 2254 are subject to a one-year period of limitation. 28 U.S.C. § 2244(d)(1). Generally, this period begins to run from the date on which the judgment of

- 5 -

Case 7:09-cv-00126-GEC-mfu   Document 22   Filed 10/13/09   Page 5 of 20   Pageid#: 635

conviction becomes final. See 28 U.S.C. § 2244(d)(1)(A).[3] A conviction becomes final once the availability of direct review is exhausted. See United States v. Clay, 537 U.S. 522, 524 (2003). However, pursuant to 28 U.S.C. § 2244(d)(2), the one-year filing period is tolled while an inmate's "properly filed application for State post-conviction or other collateral review" is "pending."

### (1) Section 2244(d)(1)(A)

The Circuit Court of the City of Salem entered judgment against Wilson on October 5, 2006, and he then had thirty (30) days to file a notice of appeal to the Court of Appeals of Virginia. See Rule 5A:6(a) of the Rules of the Supreme Court of Virginia. No appeal was filed. Therefore, Wilson's conviction became final for purposes of § 2244(d)(1) on November 6, 2006, when his opportunity to pursue a direct appeal expired. On that same day, the one-year period under § 2244(d)(1)(A) to file a § 2254 petition began to run for Wilson; his filing period expired on November 6, 2007.

Wilson's state petition did not toll the running of the filing period, pursuant to § 2244(d)(2), because he filed the state petition on March 11, 2008, after the one-year filing period under § 2244(d)(1)(A) had already expired. See Brown v. Langley, 348 F. Supp. 2d 533, 536 (M.D. N.C. 2004) ("[S]ubsequent motions or petitions cannot revive a period of limitation that has already run.").

---

[3] Under § 2244(d), the one-year period of limitation for filing a habeas petition under § 2254 begins to run on the latest of four dates:
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2244(d)(1)(A)-(D).

Wilson filed his federal habeas petition, at the earliest, on April 5, 2009, well beyond the requisite one-year statute of limitations that expired on November 6, 2007.[4] As a result, Wilson's petition is untimely under § 2244(d)(1)(A).

**(2) Section 2244(d)(1)(D)**

Wilson appears to argue that his petition should be considered timely filed under § 2244(d)(1)(D), because his state and federal habeas claims are based on documentation that his attorney did not provide to him at the time of trial, namely, the Salem criminal warrants and a list of items that Wilson pleaded guilty to stealing. Wilson complains that he did not receive this documentation until February 2008, and that he did not know until then that he was actually innocent of the crimes to which he pleaded guilty. This argument of late discovery is not supported by the record. During Wilson's plea hearing on October 5, 2006 in the Circuit Court of the City of Salem, the trial judge read into the record each criminal warrant, including the list of items Wilson was charged with taking.[5] (Tr. 9-10, Oct. 5, 2006.) As to each warrant, the judge then asked Wilson, "What's your plea to that charge?" Wilson answered, "I plead guilty." Wilson's difficulty in obtaining the warrant documents themselves does not constitute late discovery of the necessary facts to bring claims of actual innocence, as the court clearly informed him of such facts during the plea hearing.[6] Thus, Wilson offers no ground which supports the

---

[4] For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his petition to prison officials for mailing. Rule 3(d), Rules Governing § 2254 Cases. See also Houston v. Lack, 487 U.S. 266 (1988). It appears that Wilson placed his petition in the prison mailing system on April 5, 2009. Accordingly, the court will assume for purposes of this opinion that it was "filed" on that date.

[5] In Salem, Wilson pleaded guilty to stealing a Dewalt air compressor and a Dewalt miter saw valued at more than $200.00 total from Northwest Hardware; and three generators valued at more than $200.00 total from Aztec Rental Center. He also pleaded guilty to breaking and entering the Northwest Hardware building with the intent to commit larceny. (Tr. 9-10, Oct. 5, 2006.) The charges concerning lawn mowers stolen from Walmart were nolle prossed.

[6] Wilson similarly argues that he could not have challenged the voluntariness of his June 30, 2006 confession to police until February 2008, when he obtained notes from a psychiatric report performed on him that same day which noted that Wilson reported having had hallucinations. Clearly, Wilson was sufficiently aware of his own hallucinations at the time of his confession to report them to the psychiatrist and could have presented this fact to the judge at the time of his guilty plea in October

calculation of his limitation period under § 2244(d)(1)(D) from the date on which he first possessed these documents. Moreover, he does not allege any ground on which his filing period should be calculated under § 2244(d)(1)(B) or (C). Accordingly, unless he demonstrates grounds for equitable tolling, his federal petition must be dismissed as untimely, pursuant to § 2244(d)(1)(A).

### (3) Equitable Tolling

Equitable tolling is available only in "those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (internal quotation marks omitted) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). Allegations of even serious mental illness or physical injuries are not sufficient to warrant invocation of equitable tolling unless petitioner also demonstrates how these conditions constituted an extraordinary circumstance that prevented him from filing a timely petition. United States v. Sosa, 364 F.3d 507, 512-13 (4th Cir. 2004) (citing Grant v. McDonnell Douglas Corp., 163 F.3d 1136, 1138 (9th Cir.1998) (finding equitable tolling based on mental condition to be appropriate "only in exceptional circumstances, such as institutionalization or adjudged mental incompetence").

Among the grounds cited for application of equitable tolling in his case, Wilson asserts that as a result of mental health problems after his arrest, jail and prison authorities maintained him in a "mental isolation cell," at times on suicide watch, allowing him to possess only limited items of personal property. Under these restrictions, he allegedly could not possess any legal materials or even a writing pen in his cell. He alleges that he remained under these property

---

2006. His late acquisition of the psychiatric notes is not discovery of facts necessary to the legal claim so as to warrant calculation of his federal filing period under § 2244(d)(1)(D). Moreover, Wilson does not allege any respect in which the hallucinations he suffered on June 30, 2006 prevented him from voluntarily making a full and truthful confession that day of his involvement in prior burglaries and breaking and entering offenses. In his habeas petition, he states his intention on June 30, 2006, to tell the police all about these offenses in an attempt to better his own chances for lenient treatment from law enforcement

- 8 -

restrictions, to some degree, for the entire year of 2006 and seven and a half months of 2007. He states that because inmates are exempt from the Virginia Freedom of Information Act, he has been unable to obtain documentation about his strip cell status at all of the jails and prisons where he was housed in 2006 and 2007. His submissions include documents from Keen Mountain Correctional Center ("KMCC") indicating that he was on suicide watch with no access to writing materials or legal documents for several weeks in the summer of 2007. According to Wilson, he remained subject to property restrictions until September 7, 2007.

If Wilson could prove that he could not possess legal materials or a pen for significant periods during 2006 and 2007, such that equitable tolling of this period was warranted, the court could consider his petition to be timely filed.[7] Sosa, 364 F.3d at 513. The court need not require further fact-finding to resolve Wilson's claims of equitable tolling, however, because Wilson's habeas claims must be dismissed on other grounds.

### B. Procedural Default

Under the doctrine of procedural default, absent cause and actual prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). A state rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Similarly, if petitioner failed to present a habeas claim to the state court and would now be barred from doing so under an independent and adequate state law ground, his federal version of the habeas claim is barred from review on the merits, absent a

---

[7] If Wilson were to prove that equitable tolling is warranted until September 7, 2007, his current petition would be timely filed. From September 7, 2006 until March 11, 2008, when Wilson filed his habeas petition in the Circuit Court of the City of Salem to stop the clock, 186 days of the federal filing period elapsed. Pursuant to 28 U.S.C. § 2244(d)(2), the clock remained tolled during the pendency of the state habeas proceedings and began to run again on March 30, 2009, when the Supreme Court of Virginia dismissed Wilson's habeas appeal. Just days later, on or about April 5, 2009, Wilson filed his federal habeas petition, within the one-year filing period.

showing of cause and actual prejudice, or a showing of actual innocence. Teague v. Lane, 489 U.S. 288, 298 (1989) (holding that non-exhausted claim need not be dismissed as non-exhausted if claim would be defaulted in state court); Bassette v. Thompson, 915 F.2d 932, 935-37 (4th Cir. 1990) (finding that claims not raised previously that would be procedurally barred from review by the Supreme Court of Virginia now are simultaneously exhausted and defaulted).

To show cause to excuse procedural default, petitioner must demonstrate that some force outside himself prevented him bringing the claims earlier. Murray v. Carrier, 477 U.S. 478, 487-88 (1986). Counsel's errors may serve as cause to excuse the procedural default of a specific constitutional claim only if petitioner demonstrates (1) that the errors were so egregious that they violated petitioner's constitutional right to effective assistance of counsel, Strickler v. Green, 527 U.S. 263, 283 (1999), and (2) that the ineffective assistance claim itself is not procedurally defaulted, Edwards v. Carpenter, 529 U.S. 446, 452-53 (2000).

**(1) Coerced Confession**

In federal Claim 1, as in his state habeas Claim A, Wilson asserts that his confession on June 30, 2006 was coerced, in violation of his Fifth Amendment rights. The Circuit Court of the City of Salem dismissed this claim in express reliance on Slayton v. Parrigan, 205 S.E.2d 680, 682 (1974) (finding that prisoner "is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction"). The United States Court of Appeals for the Fourth Circuit has "repeatedly recognized that the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998) (internal quotations omitted). Thus, federal habeas review of Claim 1 is barred, absent a showing of cause and prejudice or miscarriage of justice. Harris, 489 U.S. at 262.

Wilson attempts to show cause for his default of this claim by asserting that in February 2008, he first obtained psychiatric notes, dated June 30, 2006, indicating that he reported having hallucinations that day. Neither Wilson's allegations nor the psychiatric report, however,

indicate any respect in which the hallucinations Wilson reported to the psychiatrist on June 30, 2006 affected Wilson's ability to offer a voluntary and truthful statement about his involvement in the thefts. Thus, Wilson fails to show cause to excuse his default of Claim 1. Absent a showing of cause, the court need not address prejudice as to this claim and must dismiss it, unless Wilson shows actual innocence.

### (2) Unexhausted and Defaulted Claims

Wilson did not present Claims 2(b),[8] 2(c) or 3 to the Circuit Court of the City of Salem in his state habeas petition, so did not properly exhaust them as required under Virginia law.[9] If he raised these claims now to the state courts, they would be barred under Virginia's successive petition rule, Virginia Code Ann. § 8.01-654(B)(2), as Wilson knew the facts necessary to bring these claims earlier. The Fourth Circuit has found this procedural rule to be an independent and adequate state law ground barring federal habeas review. See, e.g., Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997). Thus, federal habeas review of Claims 2(b), 2(c), and 3 is barred,

---

[8] Wilson's state habeas Claim B(2) alleged that counsel did not take appropriate action concerning Wilson's mental condition at the time of trial. Wilson makes a similar allegation in federal Claim 2(d). Federal Claim 2(b), however, alleges that counsel was ineffective for failing to request a reevaluation of Wilson's competency to stand trial, based on Wilson's odd behavior, including a suicide attempt, after the first competency evaluation was completed on September 9, 2006. As Wilson did not argue specifically during state habeas proceeding that counsel should have asked for a reevaluation of his competency, Claim 2(b) is unexhausted under § 2254(b), but is also defaulted under Teague, 489 U.S. at 298. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (finding that § 2254 claim not "fairly presented" for exhaustion purposes if petitioner relied on different facts or different rule of law in state proceedings). Claim 2(d) will be addressed infra.

[9] Wilson claims that he presented all of his current claims to the Circuit Court of the City of Salem in his original habeas petition or in his "formal brief" submitted before the court issued its decision. The allegations raised in Claims 2(b), 2(c), and 3 do not appear in the initial state petition. To the extent that they may have been mentioned in the "Formal Briefing" – a rambling document that Wilson submitted in response to the motion to dismiss that opened with "Dear Judge Doherty," they were not identified or addressed by the state court as new and separate claims added to his petition and must be considered unexhausted under § 2254(b). See Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (because Virginia trial court never granted leave for amendment to habeas petition to add disputed claim, claim was not properly raised in state courts for purposes of exhaustion under 28 U.S.C. § 2254). Similarly, to the extent that Wilson may have presented these federal habeas claims to the Supreme Court of Virginia in his habeas appeal, without first presenting them to the Circuit Court, he did not properly exhaust them. See Castille v. Peoples, 489 U.S. 346, 351 (1989) (rejecting argument that submission of new claim to state's highest court on discretionary review constitutes fair presentation for exhaustion purposes under § 2254(b)).

- 11 -

absent a showing of cause and prejudice or miscarriage of justice. Harris, 489 U.S. at 262. Wilson does not present any reason that he could not have raised these three claims in the state habeas petition he filed on March 8, 2008. Accordingly, he fails to show cause for his default, and the court may dismiss the claims as procedurally barred from federal habeas review, absent a showing of actual innocence.

### (3) Actual Innocence

To demonstrate a miscarriage of justice sufficient to excuse procedural default, a petitioner must show actual innocence, specifically, that "it is more likely than not that no reasonable juror would have convicted him" if jurors had received specific, reliable evidence not presented at trial. Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995). In this context, "actual innocence" means factual innocence, not mere legal insufficiency. See Sawyer v. Whitley, 505 U.S. 333, 339, (1992). On the other hand, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."[10] Herrera v. Collins, 506 U.S. 390, 400 (1993). Rather, proof of actual innocence serves as a gateway through which a habeas petitioner must pass to have his otherwise procedurally barred, constitutional claims considered on the merits. Id. at 404.

As "new evidence" of actual innocence of the Salem charges, Wilson points to documents that he allegedly did not have in his possession at the time of trial and first saw in February 2008, such as the criminal warrants to which he pleaded guilty, a copy of the June 30, 2006 statement, and additional documentation about his psychiatric problems. Even if these late-obtained

---

[10] A habeas petitioner who obtains evidence after trial demonstrating his factual innocence, but unrelated to any constitutional violation in the criminal proceedings against him, is not without recourse. "Clemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted." Herrera, 506 U.S. at 411-12. Virginia has such an executive clemency process available to Wilson. See Va. Code Ann. §§ 53.1-229 to -231.

documents constituted new evidence under the Schlup standard for showing actual innocence, Wilson fails to establish, more likely than not, that no reasonable juror would have convicted him of the charges in the Circuit Court of the City of Salem. Wilson admitted in the June 30, 2006 statement that he voluntarily initiated the conversation with police about his involvement with Hartsook's crimes and that he wanted to get the crimes off his conscience. (Case No. 7:09CV00124, Dkt. 1, Exhibit F.) He fails to demonstrate that his hallucinations, the use of LSD, or the subsequently discovered mental health problems prevented him from knowingly waiving his rights and making a voluntary and truthful statement. Thus, had Wilson rejected the plea bargain and proceeded to trial, there is no reasonable likelihood that the court would have suppressed the statement.

Moreover, based on the statement, a reasonable jury could have convicted Wilson of aiding and abetting all of the illegal acts charged. See Dunn v. Commonwealth, 665 S.E.2d 868, 871 (Va. App. 2008) ("Every person who is present at the commission of a [crime], encouraging or inciting the same by words, gestures, looks, or signs, or who in any way, or by any means, countenances or approves the same is, in law, assumed to be an aider and abettor, and is liable as principal.") (citations omitted). In the statement, Wilson described how he and Hartsook went to Aztec Rentals, rammed the car through the plate glass door, took three generators, removed the stickers, and sold them to someone. The statement also described how Wilson and Hartsook went to Northwest Hardware, crashed the car through the door, and each stole an item; Wilson took a compressor and Hartsook took a miter saw. The statement describes a third incident when the two men went to the Salem Walmart and took several lawn mowers worth more than a total of $200. After each theft, the men removed identifying marks and sold the stolen items. Wilson stated that he never received any cash from these sales, but that Hartsock would use some of the money to buy crack cocaine and food items for Wilson. In support of the Salem guilty plea, the prosecutor summarized the June 30, 2006 statement regarding the Salem crimes, indicating that

they occurred between June 14 and June 26, 2006, and that none of the items was recovered. (Tr. 29-30, Oct. 5, 2006.)

At a trial, Wilson could have testified, offered documentation of his problems with mental health and substance abuse problems, and told his story about Hartsock's forcing him to participate in these offenses. This evidence, however, does not contradict his June 30, 2006 statement about his willing participation in various aspects of the crimes. Thus, he cannot prove that, based on all the evidence, including his "new" evidence, no reasonable juror could convict him on all charges. His actual innocence claim fails accordingly under Schlup, 513 U.S. at 327, and he cannot use this procedure to circumvent his procedural default of Claims 1, 2(b) (regarding counsel's failure to seek a second competency evaluation), 2(c), and 3.[11] These claims must be dismissed as procedurally barred from federal habeas review. Harris, 489 U.S. at 262; Teague, 489 U.S. at 298.

Claim 4, arguing for habeas relief based on actual innocence, fails for multiple reasons.[12] First, as stated, Wilson has not shown actual innocence of the Salem crimes. Schulp, 513 U.S. at 327. Second, his actual innocence alone, even if he could prove it, is not a ground on which this court could grant habeas relief. Herrera, 506 U.S. at 400. The court must grant the motion to dismiss as to Claim 4.

### C. Deference to State Court Adjudications

Respondent admits that Wilson presented Claims 2(a) and 2(d) to the state habeas courts, as Claims B(1) and B(2) respectively, and the state courts addressed both claims on the merits. Because the Virginia courts adjudicated Wilson's claims on the merits, this court is bound to

---

[11] Because his actual innocence "gateway" claim fails to excuse procedural default, it also could not be used to excuse his failure to file a timely federal habeas petition under § 2244(d)(1).

[12] Wilson's state habeas Claim C was similar to federal Claim 4, alleging actual innocence of the charged crimes. The Circuit Court of the City of Salem dismissed this claim as procedurally barred, because Wilson did not raise it on direct appeal. In the federal petition, however, counsel does not argue procedural default as to Claim 4. Therefore, the court will not dismiss it on that ground.

- 14 -

follow the deferential standard set forth in 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996. This section reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "Where . . . it is the state court's application of governing federal law that is challenged, the decision must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotations and citations omitted). When a state appellate court dismisses an appeal with a summary order, the federal habeas court examines the last reasoned decision by a state court on the merits of the claim. See Ylst v. Nunnemaker, 501 U.S. 797, 801-02 (1991). A habeas petitioner is "entitled to an evidentiary hearing only to resolve disputed issues of material fact," and therefore, will not receive a hearing unless he first presents "a colorable claim to relief by showing that the alleged additional facts, if true, would at least arguably compel the granting of the writ."[13] Poyner v. Murray, 964 F.2d 1404, 1422 (4th Cir. 1992).

Under established federal law, to prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. The defendant must overcome a strong presumption

---

[13] Once he has alleged facts demonstrating a ground for habeas relief, a petitioner must also demonstrate that he developed or attempted to develop those facts in state proceedings. See 28 U.S.C. § 2254(e)(2).

that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. Id. at 694-95. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). If it is clear that the defendant has not satisfied one prong of the Strickland/Hill test, the court need not inquire whether he has satisfied the other prong. Strickland, 466 U.S. at 697.

### (1) Claim 2(a)

In this claim, Wilson alleges that counsel failed to give him the Commonwealth's discovery items, a copy of the warrants, an itemized list of the merchandise he was accused of stealing, a transcript of the June 30, 2006 statement Wilson made to police, or an explanation of the statutory elements of the offenses with which he was charged. Without having these items in his possession, Wilson argues, he did not know the specific conduct to which he was pleading guilty or whether it satisfied the elements of the charged offenses. In state habeas proceedings, counsel filed an affidavit indicating that he gave, showed, and/or discussed all of these items with Wilson before the Salem trial proceedings.[14] The Circuit Court of the City of Salem dismissed this claim for two reasons: (1) Wilson waived the claim by entering a valid guilty plea and (2) Wilson failed to show either deficient performance or prejudice under Strickland, 466 U.S. at 687.

The court agrees that Claim 2(a) fails under Strickland/Hill, because Wilson clearly cannot show prejudice. Before accepting Wilson's guilty pleas, the trial judge read into the

---

[14] Wilson asserts that he could not have possessed these items in the suicide cell at the jail. This fact does not contradict counsel's statement that he showed and discussed all of these items with Wilson, however.

Case 7:09-cv-00126-GEC-mfu Document 22 Filed 10/13/09 Page 16 of 20 Pageid#: 646

record each criminal warrant, including the list of items Wilson was charged with taking. (Rt. 9-10, Oct. 5, 2006.) Likewise, during the guilty plea hearing, the prosecutor related the contents of the June 30, 2006 statement and police investigation evidence associated with the Salem charges. In fact, the trial judge discussed the advantages of Wilson's plea agreement on the record. (Tr. 20-22, Oct. 5, 2006.) The Court emphasized that pursuant to the plea agreement, the Commonwealth dropped two of the five charges and agreed to a sentence of nine years imprisonment, with eight years and four months suspended after nine months served.[15] Thus, before he entered his guilty plea, Wilson heard in the courtroom the primary information that he now says his attorney should have showed him. Moreover, he has not shown any reasonable probability that a reasonable defendant in his shoes, given the strength of the case against him and the benefits of the plea agreement, would have rejected the plea agreement in favor of going to trial, based on any of the information counsel allegedly did not give Wilson. Hill, 474 U.S. at 58-59. As the disposition of this claim by the state courts was thus not contrary to or an unreasonable application of federal law or based on an unreasonable determination of facts, the court will grant the motion to dismiss as to Claim 2(a), pursuant to § 2254(d).

### (2) Claim 2(d)

Here, Wilson alleges counsel knew of the psychotropic drugs Wilson was taking and other developments in his mental health picture that occurred after Dr. Daum's competency finding, but allowed Wilson to enter a guilty plea while in this fragile mental state. The Circuit Court of the City of Salem dismissed this claim, finding no deficient performance, based on several factors: Dr. Daum's September 9, 2006 findings that Wilson was both competent to stand trial and not insane at the time of the offenses; counsel's affidavit statement that when he met with Wilson, the defendant seemed to understand everything related to the charges; and the lack

---

[15] The trial judge advised Wilson that each of the five charges against Wilson in Salem carried a possible sentence of twenty (20) years in the penitentiary, for a possible total sentence of 100 years. (Tr. 20, Oct. 5, 2006.)

- 17 -

of any indication during the plea hearing that Wilson did not understand the proceedings or the questions the court asked him.

To show that he was incompetent to plead guilty, a petitioner must demonstrate that "his mental faculties were so impaired . . . when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea." Roach v. Martin, 757 F.2d 1463, 1480 (4th Cir. 1985) (citing Shaw v. Martin, 733 F.2d 304, 314 (4th Cir. 1984). See also Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam) (stating test for competency to stand trial as "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has rational as well as factual understanding of the proceedings against him."

The court agrees that in the face of the evidence cited by the state habeas court, Wilson cannot show that counsel performed deficiently with regard to Wilson's mental health. Counsel stated that he spoke with officials at the jail at least once a week about Wilson, so he was likely aware of Wilson's odd behavior in September 2006 (such as cutting his wrists and mutilating his nose), his diagnoses with serious mental health problems, and the heavy medications he was taking. However, Wilson offers no evidence to contradict counsel's statements that during his meetings with counsel and in the courtroom, Wilson gave no indication that he did not understand the conduct with which he was charged, the possible sentences he faced, the benefits of the plea agreement, and the rights he waived by pleading guilty. Most importantly, counsel believed that the plea agreement offered Wilson the best chance for the lightest possible penalty for his conduct. In short, because Wilson fails to demonstrate that counsel knew he was not mentally capable of entering a valid guilty plea,[16] Roach, 757 F.2d at 1480, the court cannot find

---

[16] The court need not decide here whether Wilson's guilty plea was invalid because he was mentally incompetent at the time, because the court has already determined, supra, that this claim (Claim 3 in this petition) is procedurally barred from federal habeas review. In any event, the court does not find sufficient evidence in the record suggesting that Wilson did not understand the legal proceedings against him or the benefits of the plea agreement that he entered in the Circuit Court of the City of Salem.

- 18 -

counsel's recommendation that Wilson accept the plea agreement to be deficient representation under Strickland. 466 U.S. at 687. Absent a finding of deficient performance, the court need not address the prejudice prong under Hill. Id. at 697. As the disposition of this claim by the state courts was thus not contrary to or an unreasonable application of federal law or based on an unreasonable determination of facts, the court will grant the motion to dismiss as to Claim 2(d), pursuant to § 2254(d).

## Conclusion

For the stated reasons, the court concludes that the motion to dismiss must be granted. Claims 1, 2(b), 2(c), and 3 are procedurally barred from federal habeas review, and petitioner fails to establish that he is entitled to habeas relief on the grounds alleged in Claims 2(a), 2(d), and 4. As petitioner fails to allege facts which, if proven, would entitle him to habeas relief, no hearing or further factual development is warranted. Poyner, 964 F.2d at 1422. An appropriate order will issue this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." Therefore, this court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and counsel of record for the respondent.

ENTER: This 13th day of October, 2009.

/s/ Glen E. Conrad
United States District Judge